**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. JASON SOBEK, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-131 |
| | ) | |
| EDUCATION MANAGEMENT, LLC | ) | |
| SOUTH UNIVERSITY, LLC, doing business as | ) | |
| SOUTH UNIVERSITY ONLINE | ) | |
| ARGOSY EDUCATION GROUP, INC., | ) | |
| doing business as ARGOSY UNIVERSITY | ) | |
| ONLINE, THE ART INSTITUTES | ) | |
| INTERNATIONAL, LLC doing business as THE | ) | |
| ART INSTITUTES ONLINE and EDUCATION | ) | |
| MANAGEMENT CORPORATION, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court are DEFENDANTS' OBJECTIONS TO THE OCTOBER

22, 2012 REPORT AND RECOMMENDATION ("R & R") (ECF No. 89). Defendants

(collectively "EDMC") filed a brief in support, Plaintiff filed a response in opposition, and

Defendants filed a reply brief. The Court heard oral argument on May 13, 2013 and the motion

is ripe for disposition.

Factual and Procedural History

This qui tam False Claims Act ("FCA") case is related to *United States ex rel Washington*

*v. EDMC*, Civil Action No. 07-461 ("*Washington*"), although the United States has decided to

not intervene in this case. Plaintiff-Relator Jason Sobek was employed by EDMC from June

2008 through November 2010 as a Project Associate Director of Admissions ("ADA"). He

alleges that EDMC made false certifications of compliance regarding its eligibility to receive

federal student loan funding.  Sobek has filed a 43-page, six-count Second Amended Complaint

which alleges that EDMC made false statements in order to participate in federal student

financial assistance programs as to:

| | |
|---|---|
| Count I: | Accreditation of nursing programs; |
| Count II: | Job Placement statistics; |
| Count III: | Costs of educational programs; |
| Count IV: | Satisfactory Academic Progress (SAP) statistics; |
| Count V: | Incentive Compensation ban; and |
| Count VI: | Reverse False Claims Act – failing to report students who should have been dropped from school rolls. |

EDMC filed a motion to dismiss the entire case with prejudice (ECF No. 48).  On

October 22, 2012 Magistrate Judge Cynthia Eddy issued a 39-page R & R which recommended

that:  the motion to dismiss be DENIED as to Counts I, II and IV; and the motion to dismiss be

GRANTED as to Counts III, V and VI.  The parties agree that Count V should be dismissed

under the "first-filed rule" due to the *Washington* case, Civil Action No. 07-461.  Sobek

concedes that Counts III, V and VI should be dismissed.  Accordingly, the Court will address

Counts I, II and IV.


Discussion

EDMC presents several overarching lines of reasoning in support of dismissal:  (1) that

the job placement and SAP regulations[1] are analogous to the Medicare marketing regulations at

issue in *United States ex rel Wilkins v. United Health Group*, 659 F.3d 295, 301 n.9 (3d Cir.

2011) ("*Wilkins"),* which the Court of Appeals for the Third Circuit held cannot support an FCA

claim; (2)  Plaintiff fails to allege fraud with the specificity required by Fed. R. Civ. P. 9(b); and

(3) that the regulations at issue do not provide a sufficiently specific and objective standard, such

that an alleged failure to comply cannot constitute fraud.  EDMC also argues that this Court

---

[1] EDMC's oral argument focused on Counts II and IV, and did not directly address Count I (accreditation).

lacks subject-matter jurisdiction pursuant the "public disclosure" bar.  In response, Plaintiff

contends that: (1) the violations by EDMC alleged in this case are not analogous to the Medicare

marketing regulations at issue in *Wilkins*; (2) the complaint pleads fraud with sufficient

specificity; and (3) the regulations impose standards which Plaintiff has alleged that EDMC has

knowingly violated, such that dismissal at this stage is not appropriate.   More generally, Plaintiff

contends that the R & R was correctly decided and should be adopted as the opinion of the

Court.  The Court will briefly address these contentions seriatim.

The Applicability of *Wilkins*

Both sides agree that *Wilkins* is the most important case law authority interpreting the

FCA.  The elements of a prima facie case under the FCA are: (1) the defendant presented a false

or fraudulent claim against the United States; (2) the claim was presented to an agency or

contractor of the United States; and (3) the defendant knew the claim was false or fraudulent.

*See Wilkins*, 659 F.3d at 305.  Sobek alleges in the complaint that EDMC presented numerous

claims for student aid funding directly to the Department of Education and caused its students to

present such claims.  Plaintiff contends that those claims were false and fraudulent because

EDMC knew that it was not in compliance with applicable regulations and its Program

Participant Agreement ("PPA"), and thus, was not eligible to receive student aid funding.

Therefore, Plaintiff contends that he has pled a valid FCA claim.

In essence, EDMC argues that the allegations in this case involve improper marketing of

educational services, which are analogous to the allegations of improper marketing of medical

services which the Court held would not support an FCA claim in *Wilkins*.  EDMC points to the

discussion in *Wilkins* in which the Court explained that the False Claims Act "was not designed

for use as a blunt instrument to enforce compliance with all . . . regulations rather than only those regulations that are a precondition to payment." *Id*. at 307 (citation omitted). EDMC argues that the job placement and SAP regulations are analogous in a multitude of ways to Medicare marketing regulations and cannot support an FCA claim. EDMC argues, inter alia, that the regulations in each instance involve violations which can be corrected; rely on administrative enforcement discretion; provide a variety of potential sanctions; do not have specific standards; and do not require the government to withhold payment. In sum, EDMC reads *Wilkins* as requiring detailed scrutiny of the underlying regulations at the pleading stage.

The Court does not agree that *Wilkins* requires dismissal under the facts and circumstances of this case. In *Wilkins*, the Court of Appeals for the Third Circuit held that an FCA claim may be based on actions that are: (1) "factually false," i.e., when the claimant misrepresents the goods or services that it provided to the Government; or (2) "legally false" under an "express false certification" theory or a broader "implied false certification" theory. As recognized in *Wilkins*, liability may attach when a claimant makes a claim for payment from the Government without disclosing that it has violated regulations that affect its eligibility for payment. *Id*. As the *Wilkins* Court explained: "Thus, an implied false certification theory of liability is premised on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Id*. (citation omitted).

The test for a claim based on a false certification theory is whether an alleged violation concerns a "condition of payment," i.e., whether such violation "might cause [the government] to actually refuse payment." 659 F.3d at 309 (*citing United States ex rel Conner v. Salina Regional*

*Health Center, Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008)).[2]   The Court explained that "a

plaintiff must show that if the Government had been aware of the defendant's violations of the

Medicare laws and regulations that are the bases of a plaintiff's FCA claims, it would not have

paid the defendant's claims." *Id*. at 307.

In applying this test, the *Wilkins* Court held that the alleged violations of Medicare

marketing regulations were not conditions of payment but held that alleged violations of the

Anti-Kickback statute ("AKS") would support an FCA claim.  The Court explained that an AKS

claim would survive a motion to dismiss:

> [A]ppellants alleged that compliance with the AKS was an express condition of
> payment to which appellees agreed when they entered into an agreement with
> CMS. *See app.* at 31–32; 37–38 (stating that "Compliance with CMS MA
> Guidelines ... are express conditions of payment" and stating that the AKS is part
> of the MA Guidelines). We conclude that appellants, in stating a plausible claim
> for relief at this stage of the proceedings for their complaint to survive a Rule
> 12(b)(6) motion, need not allege a relationship between the alleged AKS
> violations and the claims appellees submitted to the Government. Rather, the
> complaint is sufficient to survive a Rule 12(b)(6) motion to dismiss because
> appellants have pleaded that appellees knowingly violated the AKS while
> submitting claims for payment to the Government under the federal health
> insurance program.

The Court then rejected the argument, similar to that articulated by EDMC in this case, that its

interpretation would transform the FCA into a strict liability statute which would expose all

Medicare participants to massive liability.  *Id.* at 314.

The student education funding context is significantly distinct from the Medicare

marketing regulations in *Wilkins* and more similar to the AKS claims.   In other cases involving

PPA's and regulations in the education context, courts have held that alleged violations of the

Incentive Compensation Ban and the regulations governing job placement statistics were

"material."  *See, e.g., United States ex rel Hendow v. Univ. of Phoenix* , 461 F.3d 1166, 1175 (9th

---

[2] The Ninth Circuit uses different verbiage – a "materiality" standard – to assess the parallel question of whether an
alleged false certification was relevant to the government's decision to confer a benefit.

Cir. 2006); *United States ex rel Capriola v. Brightstar Education Group, Inc*., 2013 WL 1499319 at * 7 (E.D. Cal. April 11, 2013). *See also U.S. ex rel. Miller v. Weston Educational, Inc*., 2012 WL 6190307 (W.D. Mo. Dec 12, 2012) (rejecting "condition of payment/participation" argument similar to that presented by EDMC). At this stage of the case, the "condition of payment" standard is met through the language of the PPA, which expressly conditions federal student assistance funding upon initial and continued compliance with the applicable regulations. *See* R & R at 28-29 (quoting PPA); *Hendow*, 461 F.3d at 1176-77 (explaining that in the educational context, the conditions of participation and conditions of payment are co-extensive). The language in the PPA satisfies the *Wilkins* test by indicating that a violation "might cause [the government] to actually refuse payment."[3] The Court is unable to accept, at the pleading stage, EDMC's contention that the alleged accreditation, job placement and SAP misrepresentations are somehow less "core" or "material" than the Incentive Compensation Ban. For example, it is certainly plausible that the government would refuse to provide funding for a student to attend a non-accredited nursing program. The Court acknowledges EDMC's extensive efforts to draw parallels between the education regulations and the medical marketing regulations at issue in *Wilkins*. EDMC may be able to avoid liability by showing that the United States would not have refused payment even if it had known of EDMC's alleged violations of the regulations at issue. However, such a defense is fact-intensive and would not justify dismissal at the pleading stage.

Heightened Pleading Standard

The R & R thoroughly articulated and analyzed the pleading standards and requirements of Fed. R. Civ. P. 8 and 9(b) for an FCA claim, in accordance with the discussion by this

---

[3] The Court is confident that the rather rigorous scienter requirement for an FCA claim will prevent every conversation between a recruiter and prospective student from forming the basis of a million or billion dollar fraud case. See *Wilkins*, 659 F.3d at 314.

member of the Court in *Washington*.  It is evident that Magistrate Judge Eddy conscientiously

applied the pleading standards to the allegations in the Second Amended Complaint because she

concluded that Counts I, II and IV pled cognizable claims, but recommended dismissal of Count

III because the supporting allegations were too non-specific and vague to meet the standard.  R

& R at 33.

EDMC relies heavily on *United States v. Chubb Institute* ("*Chubb I*"), 2010 WL 1076228

(D.N.J. Mar. 22, 2010), *aff'd*, 2011 WL 3890975 (3d Cir. Sept. 6, 2011) (*"Chubb II"*); *United*

*States ex rel Gatsipoulous v. Kaplan Career Inst*., 2010 WL 5392668 (S. D. Fla. 2010) (job

placement allegations too conclusory) and *United States ex rel Diaz v. Kaplan Univ*., 2011 WL

3627285 *4 (S.D. Fla. 2011) (no facts pled as to SAP claim), for the proposition that courts have

dismissed similar FCA claims against educational institutions for lack of specificity.  However,

those cases are non-binding and distinguishable.  The *Chubb I* Court explained that Plaintiffs had

access to numerous documents courtesy of a government subpoena and could have prevailed by

pleading more detailed facts.  2010 WL 1076228 * 8-9 (job placement and SAP claims).

Magistrate Judge Eddy correctly concluded that Counts I, II and IV of the Second Amended

Complaint in this case contain plausible and particularized factual allegations of the alleged

fraudulent scheme and scienter.

Deference to Agency Enforcement of Vague Regulations

EDMC argues, in essence, that because the regulations governing job placement and SAP

reporting contain somewhat vague and flexible standards, they must be enforced administratively

by the Department of Education and cannot serve as the predicate for an FCA claim in federal

court.  EDMC points to 34 C.F.R. § 668.75, which provides a mechanism for the Department to

determine the seriousness of an allegation and an opportunity for an institution to make an informal, voluntary correction of a "minor" misrepresentation. EDMC also cites to 34 C.F.R. § 668.14, which lacks a mandatory formula for computing job placement statistics; and 34 C.F.R. § 668.16(e), which requires an institution to establish "reasonable" standards for measuring SAP.

The existence of an administrative enforcement mechanism does not preclude the possibility of an FCA claim. *United States ex rel Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 414-15 (8th Cir. 2012) (government may select from a variety of remedies to combat fraud). Moreover, the contention that EDMC complied with and/or did not knowingly violate the standard set forth in the regulations because it implemented "reasonable" job placement and SAP policies is a fact-intensive defense. *Id*. ("The scope of regulatory requirements and sanctions may affect the fact-intensive issue of whether a specific type of regulatory non-compliance resulted in a materially false claim for a specific government payment.") (citing *Wilkins*). Thus, EDMC's contention does not justify dismissal at the pleading stage.


Jurisdictional Defense - Public Disclosure Bar

Courts do not have jurisdiction over False Claims Act claims that are based upon publically disclosed information, unless the person bringing the action is an original source of the information. 31 U.S.C. § 3730(e)(4)(A)). EDMC argues that it has made a jurisdictional challenge to Count II, which must be resolved at the earliest possible stage and contends that Sobek has failed to meet his burden to prove jurisdiction. In response, Sobek contends: (1) that there was not a sufficient public disclosure by EDMC to put the government on notice of fraud; and (2) that his inside knowledge makes him an original source, such that he falls within the

statutory exception to the "public disclosure" bar. The R & R concluded that this defense was somewhat vague and premature.

It is readily apparent that there are unresolved factual questions regarding the applicability of the public disclosure bar, which at least partially overlap with the merits of the claim. Thus, the Court agrees with Magistrate Judge Eddy that a final determination is premature at this time. On the other hand, the Court agrees with EDMC that the defense is "jurisdictional." *See Rockwell Intl. Corp. v. United States*, 549 U.S. 457, 467-68 (2007) (the reference to "jurisdiction" in § 3730 is, in fact, jurisdictional rather than defining the elements of the cause of action). Accordingly, the Court will be receptive to case management proposals which expedite jurisdictional discovery and resolution of this issue.


Conclusion

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636, the Court has conducted a de novo review of the pleadings, the R & R of Magistrate Judge Eddy, and the objections thereto. In accordance with the foregoing, DEFENDANTS' OBJECTIONS TO THE OCTOBER 22, 2012 REPORT AND RECOMMENDATION ("R & R") (ECF No. 89) will be **OVERRULED** and the October 22, 2012 Report and Recommendation will be adopted as the opinion of the Court. DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) (ECF No. 48) will be **GRANTED IN PART** as to Counts III, V and VI and **DENIED IN PART** as to Counts I, II and IV. Defendants shall file an Answer as to Counts I, II and IV on or before June 14, 2013.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. JASON SOBEK, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-131 |
| | ) | |
| EDUCATION MANAGEMENT, LLC | ) | |
| SOUTH UNIVERSITY, LLC, doing business as | ) | |
| SOUTH UNIVERSITY ONLINE | ) | |
| ARGOSY EDUCATION GROUP, INC., | ) | |
| doing business as ARGOSY UNIVERSITY | ) | |
| ONLINE | ) | |
| THE ART INSTITUTES INTERNATIONAL, | ) | |
| LLC doing business as THE ART INSTITUTES | ) | |
| ONLINE and EDUCATION MANAGEMENT | ) | |
| CORPORATION, | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW this 31st day of May, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANTS' OBJECTIONS TO THE OCTOBER 22, 2012 REPORT AND RECOMMENDATION ("R & R") (ECF No. 89) are **OVERRULED** and the October 22, 2012 Report and Recommendation is hereby adopted as the opinion of the Court.  DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) (ECF No. 48) is **GRANTED IN PART** as to Counts III, V and VI  and **DENIED IN PART** as to Counts I, II and IV.

Defendants shall file an Answer as to Counts I, II and IV on or before June 14, 2013.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    All counsel of record
       Via CM/ECF